**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 16 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-10354 |
| Plaintiff-Appellee, | D.C. No. 1:17-cr-00101-LEK-1 |
| v. | |
| ANTHONY TROY WILLIAMS, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted February 18, 2022
Honolulu, Hawaii

Before: HAWKINS, R. NELSON, and FORREST, Circuit Judges.

Anthony Williams appeals his conviction for fifteen counts of wire fraud in violation of 18 U.S.C. § 1343 and seventeen counts of mail fraud in violation of 18 U.S.C. § 1341, all stemming from his operation of a fraudulent mortgage scheme. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

1.     There was no abuse of discretion or manifest error in the district court's decision not to excuse Juror No. 5 for actual bias. *See United States v. Kechedzian*, 902 F.3d 1023, 1027 (9th Cir. 2018) (noting a deferential standard of review for actual bias because it "may be based on the district court's evaluation of a prospective juror's demeanor"). After a brochure for Williams's law office was entered into evidence, the juror informed the court that she might have seen the same brochure in the room of her college-age daughter, who was seeking a summer internship. During the colloquy that followed, the district court asked Juror No. 5 whether she would be able to put aside any concerns about her daughter's internship search and serve as a fair and impartial juror. Although Juror No. 5 initially answered with statements like "I think I can," she later stated unequivocally "I can" and "Yes, I will" when asked whether she could be fair and whether she would promise to keep an open mind. The district court was not obligated to excuse her based on her initial responses in light of the definitive statement of impartiality that followed. *See United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995), *as amended on denial of reh'g* (Apr. 11, 1995).

2.     Nor did Juror No. 5's circumstances rise to the level of the "extraordinary cases" in which we presume bias. *See Kechedzian*, 902 F.3d at 1027 (quoting *Dyer v. Calderon*, 151 F.3d 970, 981 (9th Cir. 1998) (en banc)) (noting that implied bias is subject to de novo review "because [it] present[s] mixed questions of

2

law and fact"). Juror No. 5 was not certain the brochures were the same, and Williams indicated that his law office did not offer internships or part-time work to college students. Further, the daughter's internship application process was not to begin in earnest until after the trial was likely to conclude. We ordinarily do not presume bias based on the employment relationship of a juror's family member. *See United States v. Olano*, 62 F.3d 1180, 1192 (9th Cir. 1995) (daughter-in-law). The circumstances of this case are far from the "extreme" sort that give rise to a finding of implied bias. *See Kechedzian*, 902 F.3d at 1028; *United States v. Gonzalez*, 214 F.3d 1109, 1110–11, 1114 (9th Cir. 2000) (reversing for implied bias where the defendant's alleged conduct closely mirrored a juror's "painful" and "traumatic" experience).

3. Williams has not made out a prima facie case that his jury violated the Sixth Amendment's fair-cross-section requirement based on the asserted absence of African Americans from his venire.[1] *See Duren v. Missouri*, 439 U.S. 357, 364 (1979). He fails to provide data sufficient to show that the jury pool in the District of Hawaii "does not adequately represent [African Americans] in relation to the number of such persons in the community," *see United States v. Esquivel*, 88 F.3d 722, 726 (9th Cir. 1996), nor does he tie the asserted underrepresentation to the

---

[1] Although the government argues that the record is unclear as to whether or not there were African Americans in the venire, we reject Williams's challenge for other reasons.

district's procedures to establish that it is "inherent in the particular jury-selection process utilized," *see Duren*, 439 U.S. at 366–67.  His challenge thus fails.

**AFFIRMED.**